**In re George Minier BRALEY and Linda Sue Braley, Debtors.**

**Bankruptcy No. 83–00225.**

United States Bankruptcy Court, D. Vermont.

April 3, 1984.

Holly K. Harris, Asst. U.S. Atty., Rutland, Vt., for the Farmers Home Administration.

Christopher Dye, Bradford, Vt., for the debtor.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

The debtors (the Braleys) filed for relief under chapter 11 of the Bankruptcy Code (Code) on November 19, 1983. The instant matter comes before the court on the Braleys' motion of December 2, 1983, to reject their assignment of February 3, 1983, of certain periodic milk check proceeds to the Farmers Home Administration (FHA). The Braleys also seek a ruling that the automatic stay of Code section 362(a) bars the operation of the instant assignment. A dispute exists as to whether the assignment constitutes an executory contract which the Braleys, as debtors in possession, may reject under Code section 365. The facts are not in dispute.

### FACTS

On December 1, 1980, the Braleys borrowed $55,000 from FHA under a promissory note of even date secured by certain farm equipment and livestock, as evidenced by a security agreement of even date.

On May 21, 1981, the Braleys borrowed $14,500 from FHA under a promissory note of even date.

On June 29, 1982, the Braleys executed a security agreement in favor of FHA. The collateral was farm equipment and livestock, including most of the collateral under the 1980 security agreement.

On February 3, 1983, the Braleys made a written assignment to FHA of proceeds in the amount of $1,330 monthly for the sale of dairy products sold by the Braleys to or through Agri-Mark, Inc. (Agri-Mark). Agri-Mark accepted the assignment, and

FHA released any lien or security interest it may have had in dairy products sold by the Braleys to or through Agri-Mark.

On June 27, 1983, the Braleys borrowed $1,700 under a promissory note of even date secured by certain farm equipment and livestock as evidenced by a security agreement of even date. The collateral recited in the security agreement included most of the collateral included in the 1980 and 1982 security agreements.

## DISCUSSION

■ Code section 365 governs the rejection of executory contracts. The section provides that a debtor in possession "... may assume or reject any executory contract...." [1] Though there is no precise definition of what contracts are executory, section 365 generally includes contracts on which performance remains due to some extent on both sides. A note is not usually an executory contract if the only performance that remains is repayment. Performance on one side of the contract would have been completed and the contract is no longer executory. House Report No. 95–595, 95th Cong., 1st Sess. 347 (1977); Senate Report No. 95–989, 95th Cong., 2nd Sess. 58 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. Section 365 contemplates contracts under which the obligation of both the debtor and the other party are so far unperformed that a failure of either to complete performance would constitute a material breach excusing the performance of the other. *In Re Soter*, 26 B.R. 838, 842 (Bkrtcy.D.Vt.1983); *In Re New England Carpet Co.*, 18 B.R. 514, 516 (Bkrtcy.D.Vt. 1982).

■ As a preliminary matter, the court rejects the notion that the February 3, 1983, assignment "... is part of a larger agreement between the Parties embodied by Notes and Security Agreements ..." as suggested by the Braleys. The assignment, not executed contemporaneously with any note or security agreement executed by the debtors, is a writing of independent legal significance separate and distinct from the various loan bargains existing between the Braleys and the FHA. The rights conferred by the assignment are collateral to, not inextricably intertwined with, the rights of the parties under the various obligations appearing in this case. Thus a determination as to whether the assignment constitutes an executory contract must be made with reference to the four corners of the assignment document, and without reference to the security agreements of 1980, 1982 and 1983. Nor may the impact of the assignment on the estate be considered; the characterization of a contract as executory or nonexecutory is determined with reference to the status of the duties, if any, to be performed, not with reference to whether a party finds the contract burdensome.

■ The assignment at issue requires Agri-Mark to pay FHA $1,330 monthly towards the satisfaction of the Braleys' indebtedness to FHA. The loan contracts underlying the indebtedness are not executory, the FHA having fully performed by making the loans. As the underlying loan contracts are not executory, performance by FHA having been completed, the existence of the Braleys' duty to pay off the debt is the only performance that remains outstanding. The assignment is merely the vehicle through which repayment is to occur. As such, the assignment may not be rejected as an executory contract under Code section 365.

This case is not like the case *In the Matter of the Brethren's Home*, 24 B.R. 336, 5 B.C.D. 658 (Bkrtcy.S.D.Ohio 1979), where a life care contract was properly rejected as executory on the basis that an outstanding performance of continuing professional services remained due on the contract. Indeed, the *Brethren's Home* court noted that contracts not rejected as executory usually involve the debtor's obligation for repayment of money only. *Matter of the Brethren's Home*, 5 B.C.D. at 661.

---

1. § 365 refers specifically to a trustee but a debtor in possession has the same rights, powers and duties as a trustee. § 1107 of the Bankruptcy Code.

In sum, the contracts underlying the instant assignment are not executory in nature for the reason that only the Braleys have executory duties, namely, their obligation to repay the loans, and the operation of the assignment as the chosen vehicle to effectuate the Braleys' performance does not change this result.

■ Further, the court holds that the operation of the assignment is not barred by the automatic stay of Code section 362(a)(6). This section proscribes "... any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case...." Although the loan indebtedness represents a claim against the Braleys that arose before the commencement of the case, the operation of the assignment does not require any affirmative act by FHA. The mere receipt of payments against the instant indebtedness is not an act proscribed by section 362(a)(6). The cashing of checks received from account debtors of accounts assigned as security might be a technical violation, but where the action is consistent with the pre-filing contractual arrangements between the parties it is hardly cause for complaint. *Collier on Bankruptcy* (15th Ed.) 2:362.04[6] at page 362–35.

## ORDER

Upon the foregoing,

IT IS ORDERED that:

(1) the debtors' motion to reject the executory contract be, and hereby is, DENIED; and

(2) that the automatic stay of Bankruptcy Code § 362(a) does not bar the operation of the Braleys' assignment, accepted by Agri-Mark, Inc., in favor of the Farmers Home Administration.