**In re AIR VERMONT, INC. and North Atlantic Airlines, Inc., Debtors.**

**Bankruptcy Nos. 84–17, 84–19.**

United States Bankruptcy Court, D. Vermont.

Jan. 7, 1985.

Samuel H. Press, Burlington, Vt., for the Bank.

Joseph C. Palmisano, Barre, Vt., for debtor.

Douglas J. Wolinsky, Burlington, Vt., for Gene R. Kazlow.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

The matter is before the court on the motion of Bank of America National Trust and Savings Association (Bank) for relief from the automatic stay of Bankruptcy Code (Code) section 362(a). Hearings were held and continued from time to time. The final hearing was held on November 9, 1984; subsequently, the parties filed memoranda of law. From the records in the

case and the testimony adduced at the hearings, facts as set forth below were established.

## FACTS

The debtor, Air Vermont, Inc. (Air Vermont), had in its possession on bankruptcy day a certain 1977 Piper Navajo Chieftain aircraft, serial number 31–77752143, Federal Aviation Administration (F.A.A.) registration number N27313 (aircraft). Air Vermont owned the aircraft as vendee under a conditional sales contract between Air Vermont and its vendor, California Chieftain (Chieftain), a California partnership composed of three persons: Warren M. Francis, Warren M. Francis, Jr., and James W. Coleman. At the time of execution of the contract in 1982, Chieftain owned the aircraft subject to a purchase money security interest in favor of the Bank. The contract of sale to Air Vermont as Chieftain's conditional vendee has never been recorded, and the Bank was not aware of the occurrence of the sale until this case was commenced in 1984.

The security agreement between Chieftain and the Bank granting the Bank an equipment security interest in the aircraft was executed by the members of the Chieftain partnership and recorded with the F.A.A. in 1977. (Also recorded in 1977 were the bill of sale conveying the aircraft to Chieftain from Chieftain's vendor, and an aircraft registration application in the names of the Chieftain partners.) The security agreement provides that Chieftain will not transfer any rights in the aircraft to anyone other than the Bank, nor remove the aircraft from California without prior written permission of the Bank. The Bank's equipment security interest is referenced in the Chieftain-Air Vermont contract as follows:

> RECITALS ... A portion of the Aircraft is presently financed with a loan from Bank of America, Santa Ana Main Branch, Santa Ana, California. The loan is presently current, with the next payment due May 20, 1982.

· · · · ·

AGREEMENT ... PURCHASE PRICE ... *Application of Payments:* SELLERS agree that upon receipt of monthly payment called for to be made by BUYER under the terms hereof, they shall forthwith cause the monthly payment which they are obligated to make to be made to the Bank of America.

· · · · ·

*Acceleration by Bank of America:* BUYER expressly assumes the risk that Bank of America may attempt to accelerate the entire principal balance due and owing under the terms of the loan under which he is financing the subject Aircraft with SELLERS as described in the "Recitals" portion of this Agreement as a result of the within sale occurring, and in the event that said Bank of America should so accelerate the balance owing thereunder, BUYER agrees to pay the balance owing under its purchase price, in order that merchantable title to the Aircraft might be given to BUYER in the event of acceleration by Bank of America.

· · · · ·

INSURANCE REQUIREMENTS ... *Additional Insured:* BUYER shall cause the company with which he places the above-mentioned insurance of the Aircraft to name SELLERS as additional insureds on any insurance policy required under the terms hereof, and such shall also list Bank of America, as an additional isured. A breach of warranty endorsement shall be part of the policy, and such policy shall further provide that the insurance may not be cancelled without giving thirty (30) days prior written notice to SELLERS and Bank of America.

The contract was negotiated in California, and the contract contains a choice of law clause designating California law as the law to be applied in disputes arising under or in connection with the contract.

No document in the name of Air Vermont has ever been recorded with respect to the aircraft at the F.A.A. There is no

evidence that, prior to purchasing the aircraft, Air Vermont searched the F.A.A. records to discover prior encumbrances. Air Vermont has no equity in the aircraft. *See* memorandum and order (September 28, 1984).

The F.A.A. records show that the only encumbrance on the aircraft is the Chieftain-Bank security interest. Chieftain has been in default with respect to its obligations to the Bank since May 1984. Neither Chieftain nor its partners were at any relevant time dealers in aircraft.

The Bank did not authorize the Chieftain-Air Vermont sale or the removal of the aircraft from California.

## DISCUSSION

■ It is well settled that state laws allowing undocumented or unrecorded transfers of interests of aircraft to affect innocent third parties are preempted by the Federal Aviation Act of 1958, 49 U.S.C. §§ 1301 *et seq. Philko Aviation, Inc. v. Shacket,* 462 U.S. 406, 103 S.Ct. 2476, 76 L.Ed.2d 678 (1983); *South Shore Bank v. Tony Mat, Inc.,* 712 F.2d 896 (3d Cir.1983); *Dowell v. Beech Acceptance Corp., Inc.,* 8 U.C.C. Rep. Serv. 274 (1970), *cert. denied,* 404 U.S. 823, 92 S.Ct. 45, 30 L.Ed.2d 50 (1971); *Comair, Inc. v. Air Vermont, Inc.,* 45 B.R. 820 (D.Vt.1984). Specifically, the holder of a prior recorded security interest in aircraft is entitled to prevail over a subsequent buyer in the ordinary course of business who does not record. *Dowell v. Beech Acceptance Corp., Inc., supra; In re Air Vermont* (Bankr.D.Vt. 10/20/84). The interest of Air Vermont in the aircraft under the Chieftain-Air Vermont contract is not enforceable in this proceeding for the reason that every instrument affecting title to aircraft must be recorded before it obtains whatever priority applicable state law affords it, *Philko v. Shacket, supra; Dowell v. Beech Acceptance Corp., Inc., supra; South Shore Bank v. Tony Mat, Inc., supra; Comair, Inc. v. Air Vermont, Inc., supra; In re Air Vermont, supra,* and Air Vermont never caused to be recorded its interest as a conditional vendee of the aircraft.

■ Assuming *arguendo* that the Bank does not own the aircraft as a matter of federal law, the Bank owns the aircraft as a matter of state law. The facts are that at the time of the sale of the aircraft by Chieftain to Air Vermont, the Bank held a perfected purchase money equipment security interest in the aircraft. The terms of the security agreement granting the security interest (1) forbade Chieftain from transferring any interest in the aircraft to any person other than the Bank, and (2) required written permission for the aircraft to be removed from California. Thus the sale by Chieftain and the incidental removal of the aircraft from California, both occurring without authorization from the Bank, were in violation of the recorded security agreement and triggered the right of the Bank to repossess or resell the aircraft immediately in accordance with the terms of the agreement. *See* Security Agreement at paras. 14, 15. The Bank retained its security interest despite the Chieftain-Air Vermont transaction. *See* California Commercial Code §§ 9201 ("security agreement is effective according to its terms ... against purchasers of collateral").

■ Air Vermont argues that Air Vermont, as a buyer in the ordinary course of business, purchased the aircraft from Chieftain; that Chieftain was a dealer in aircraft; and that therefore, under California Commercial Code § 9301(1), Air Vermont took the aircraft free and clear of any right in the Bank as secured party. California Commercial Code section 9307(1) provides: "a buyer in the ordinary course of business ... takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence". The rule applies to sales consummated by "a person in the business of selling goods of that kind ... primarily [from] inventory." Uniform Laws Comments. The testimony at trial established that Chieftain bought, and then sold, only one aircraft

during the partnership existence, and that at no time during the partnership existence was Chieftain, or any partner of the partnership, a dealer or broker in aircraft or a person in the business of selling aircraft. Thus California Commercial Code section 9307(1) does not apply to the Chieftain-Air Vermont transaction. Therefore, Air Vermont did not take the aircraft free of the Bank's interest in the aircraft. As noted, the Bank did not authorize the Chieftain-Air Vermont sale or the removal of the aircraft from California. With respect to the Bank, the Chieftain-Air Vermont sales contract is a nullity.

On the facts, the Bank is entitled to relief under Code section 1110, including the right to possess the aircraft unaffected by the automatic stay of Code section 362(a). However, since the Bank has moved for relief under Code section 362(d), the requirements of section 362(d) must be met. The section permits relief from the automatic stay, "for cause", including the lack of adequate protection of an interest in property of the moving party, or (2) with respect to a stay of an act against property, if the debtor does not have an equity in the property and the property is not necessary to an effective reorganization. The Bank has established its right to relief under either of the section 362(d) tests.

Air Vermont has no equity in the aircraft. *See* memorandum and order (September 28, 1984). Further, the aircraft is not necessary to an effective reorganization for the reason that the only reorganization before the court is a liquidation plan. Moreover, in that the debtor has no equity in the aircraft, the debtor, to provide the Bank with adequate protection of its interest in the aircraft, would be required to make periodic payments to the Bank, or, alternatively, to give the Bank additional or replacement liens on other assets of Air Vermont such as would furnish the Bank with the indubitable equivalent of its interest in the aircraft. *See* Code § 361. Such indubitable equivalent would include compensation to the Bank for the opportunity cost of being prevented from repossessing and selling the collateral. *See American Mariner Industries, Inc. v. Crocker National Bank,* 734 F.2d 426, 12 B.C.D. 227 (9th Cir.1984). It does not appear that Air Vermont is in a position to make compensatory periodic cash payments to the Bank, nor to grant liens on other assets such that the liens granted would provide the Bank with the indubitable equivalent of its lien on the aircraft. In any event Air Vermont has made no showing that it is in a position to adequately protect the Bank's interest in the aircraft, and the burden as to the issue of adequate protection on Air Vermont. *See* Code § 362(g).

The court concludes that the Bank is entitled to relief from stay. The Bank's motion should, therefore, be GRANTED. Judgement is being entered accordingly.